And we'll move to the second case of the day, 21-10619, Chabad v. The School Board of Miami-Dade County. And I see that we have Mr. Stock here for the appellant. Mr. Silverman and Mr. Ronzetti are splitting their time, 7 and 8. So, Mr. Stock, you've got 10 minutes to start. Thank you, Your Honor. Good morning. My name is Robert Stock and I have the honor of representing Chabad Chayil in this case. Your Honor, what this case concerns is the effect of a grossly distorted and highly questionable investigative report by the Office of the Inspector General of the Miami-Dade School Board that resulted in a very highly rated after school program being denied access to the use of the Miami-Dade County school facilities. And one of the reasons why this case was dismissed is because we attached that report. We attached a draft report. We also attached a rebuttal to that report, which in vociferous terms, renounced the report. And then we attached the final report. And we attached those reports to show the unfairness, the lack of adherence to all reasonable principles of investigative protocol and how those conclusions were damaging. And instead of realizing the context in which the reports were attached, the court came to the conclusion that, well, you attach these reports. These reports are deemed, it's an exhibit. The exhibit is deemed true. We're not going to consider the rebuttal report, which, you know, attacks the report. But we're going to just take the reports as true. And it negates all your pleadings and you're out of court. Let me ask you this. Is that really what happened? Or is it that you alleged fundamentally that you were targeted on religious grounds, speech grounds, and that the district court says that, in fact, there was a complaint that launched this investigation? Your complaint, your own complaint, refers to the anonymous complaint. And it's just the fact of the investigation that sort of rebuts your allegation of targeting. Well, no. The opinion says that the report has to be taken as true. And if you take the report as true, then there's no, then the OIG did nothing wrong. The complaint does allege targeting. It does allege religious discrimination. And, frankly, there's no other explanation for such a grossly inaccurate report than that it was the result of a discriminatory practice. I mean, this investigation was carried on over two years. It was after the investigator said, I see nothing wrong. The report should be closed. Let me ask you something, sir. So normally in the 11th Circuit, when you have exhibits which contradict the general allegations in the complaint, the exhibits govern. So legally, isn't that what the district court was doing? I mean, why did it err in crediting the contents of the OIG's report? Judge Covington, you put the question directly on point. And the direct answer is that when you attach an exhibit to the complaint, as six of your sister circuits, as recognized in Griggs versus Vitani, view the exhibit not as a proof of the allegations or in support of the allegations, but they review the exhibit in the context in which it's offered. In other words, if I have a libel complaint and I attach the libelous article, a libelous statement, I've pled myself out of court because if the court has to take that exhibit as true for the purposes of the motion to dismiss, then the libel is taken as true and truth is a complete defense to libel. And I've just pled myself out of court. And that doesn't make any sense. Quick question. So if the only thing that the district court here took from the investigative report as true was that there was an anonymous complaint filed and that caused an investigation to go forward, is that forbidden? No, that's not forbidden. But in the course of the investigation, when the investigators found that the practice in Dade County is to allow organizations to obtain fee waivers even in cases where they charge fees and where the policy of the school board is to uncover fraud and where the Dade County code requires the inspector general to investigate fraud and the inspector general becomes aware of these actions which the inspector general deems a fraud, then the inspector general has a non-delegable duty to investigate that fraud. And they didn't. And that's a demonstration of bias and prejudice. Why was my client singled out? Why? Because they got a piece of paper and said, and the paper said nothing about fees. The nature of the complaint was that there's an organization that's teaching religion in the public schools. It didn't say that there were fee problems. It didn't say that there were problems with DCF regulation. They didn't say that there were problems with any of the myriad of factors that the OIG frankly made up to damn my client. It just said that they're teaching religion in the school. And that's the one thing, ironically, that the OIG didn't complain about. So, no, you have to look at the circumstances in their totality, the reasons why the report was attached, and the fact that the district court judge ignored the rebuttal to the report, it seems to me is unreasonable. I mean, here we attach the report and we attach, besides the allegations which said that it was wrong, we indicated in the complaint in substantial detail why the allegations were wrong, but then we attached our rebuttal report, which went into excruciating detail as to why these allegations were wrong, and the court says, well, we have to accept the report as true. Mr. Stock, if I can, you spent most of your argument talking about the substance or merits of the claim and the use of the report which would go to that. I'd like to ask you a different question if I could. Of course. When I read Judge Skola's opinion, he dismisses the 1983 claims against the Miami-Dade County School Board for one reason, and only one reason, because he said Chabad did not sufficiently allege that the unconstitutional actor was performed by a final policymaker under Monell. Now, when he went to the OIG and those defendants, he got into the merits for due process and equal protection, although, interestingly enough, even then he didn't touch free exercise. But I want to ask you about the Dade County School Board itself. Tell me why, in your view, the district judge erred in dismissing the case on the grounds that there was no final decisionmaker alleged in the complaint. Because we did allege a final decisionmaker. We allege that the superintendent of schools, which under Florida Statutes 1001.51 is the custodian of all the school's property. He's the policymaker by statute. When you say is the policymaker by statute, what do you mean by that? Because that's your own gloss on the statute. As I read the statute, I just don't see that. I see that he has to work in conjunction with the board. Yeah, he has to advise the board as to what he's doing. He doesn't say he has to receive the consent of the board. He said that he's the custodian of all the school's property. I mean, this is a complaint regarding a denial of the use of property. The school board doesn't run by itself. It runs by the superintendent. It runs by the CFO, the COO. It runs by its attorneys. It runs by its deputy attorneys. Those are all actors that we allege, and they're all policymakers that violated our client's rights. I mean, who could we allege? I mean, the school board is not like the Wizard of Oz that we don't know who's behind the curtain. Obviously, we allege that the superintendent of schools is the principal policymaker. If we allege that the president of the United States violated certain rights, it's very similar. They're the chief executive officer of the United States. The superintendent of schools is the chief executive officer of the school board. He's the guy that's principally responsible. Not principally, he's the guy that is responsible for the policies of the school board. So as a result of that, we've complied with Monell. And I couldn't imagine who else we could have alleged is responsible for this. He's the one that made the decision, and we allege that. And his decision was binding on our clients. And so I think that we complied with Monell in this case. And it's very, very unfortunate, because this is a program that benefited 200 disabled students, gave them a place to go after school in a nurturing environment to be able to receive education, support, love, and assistance in their lives. And it was completely thrown out based on trumped-up charges and based upon misconduct of the school board. Thank you. Very well, thank you so much. You've got your rebuttal time remaining. Mr. Silverman, first up to the board. Good morning, Your Honors. May it please the Court, Bradley Silverman on behalf of the Miami-Dade County School Board of Florida. District Court absolutely correctly determined as to the claims against the school board that the plaintiff's amended complaint failed to establish any basis to impose direct municipal liability on the school board. The complaint has a lot of allegations about the actions of individual, executive individuals within the school board, within the superintendent's purview, who are exercising their discretionary authority as administrators. But that's not what the law requires in order to impose direct governmental liability on the governmental entity itself. And in this case, Judge Scholz... Well, let me ask you this question. The school board itself is made up of elected members in the county, and they select a superintendent. The superintendent of schools is given power specifically by the legislature. The state legislature tells us what the powers are of the superintendent, right? Correct, Your Honor. So we said in Martinez that when you're looking for who is the final decision-maker, we say the determination of whether or not a final official has final policy-making authority is governed by state law, including valid local ordinances as well and local rules as well. I looked at the Florida statute, and this is what I want you to help me with. I'm talking about Section 1001.51, Subsection 4, and it reads this way. It says, under the heading of Duties and Responsibilities of the District School Superintendent... This is the state legislature now. The District School Superintendent shall exercise all powers and perform all duties listed below and elsewhere in the law. And then you go down to Number 4, and it talks of school property, which is what we're talking about here, access to school property. And it reads, the superintendent shall act for the school board as a custodian of school property. What do you take that to mean when the legislature gave the power to the superintendent of schools to be the custodian of school property? What falls into his duties as a custodian? Well, I think the... As a custodian, you give it just plain and ordinary meaning. He is the person responsible for custody and control of all school board property. There are numerous other provisions of that statute and also 1001.41 and 1001.42, which establish the duties and powers of the school board itself. Right. I'm not asking about that. I'm asking you to tell me, ordinary language, what does the custodian of property have amongst his responsibilities because the state legislature said, you're the guy in charge of custodian. That didn't mean that he was the janitor who was supposed to sweep the floor. Presumably, his responsibility went beyond that. I'm just trying to get you to tell me what I should read into the legislature's codification that the superintendent is in charge of property as, quote, the custodian. I think that it means exactly what we think it means, that the superintendent is responsible for the final decisions relating to the use, upkeep, maintenance, etc., of school property. Obviously, he is not the custodian... He's the final word, just to use your words, but deciding how that property is used, who can use it and who can't. Would that be fair? No, Your Honor, I think that the superintendent... What I think it means is that the superintendent is responsible for that, but he delegates to people like the CFO, the facilities use manager, how that property is actually used. And as it relates to this case, when it comes to Monell liability, even if the superintendent is the final decision maker for how property is used, what the rules are, what the scope of uses can be for the ultimate upkeep and maintenance of that property. When you're talking about Section 1983 liability for the actions of a final decision maker, you have to juxtapose, what are they alleging the superintendent did in exercising that authority that caused the constitutional violation? Let me put my question slightly differently. Sure. I don't doubt that the superintendent can delegate these custodial responsibilities to subordinates. That's clear and that's what you're saying. But isn't the superintendent the final boss man, the final say about the use of school property? I would say not the final say because the preliminary part of Section 1001.51 says that in exercising all of the powers listed in the statute, the superintendent is to act with the advice and counsel of the school board. And the McAllister case, which I think both parties have cited, which is a state court case interpreting the scope and power of a superintendent's delegated authority from the legislature, that case notes that, pursuant to the statutory regime in 1001, including 1001.41 and .42, the school board ultimately has the ability to overrule decisions made by the superintendent. Interesting question. They could fire him if they're not happy with his performance, but I'm not sure under the statute that they could overrule him insofar as he says, I want to use the property for this purpose, but not that. Well, I think they can. I think the statute can fire him. That's clear. I'm just, yes, but I'm simply, and maybe they could overrule him. But all I'm asking is when I looked at the complaint and I looked at paragraph 14 of the, I guess it was the amended complaint, it reads as follows. It says Alberto Carvalho is and was at all relevant times the superintendent of Miami-Dade schools and responsible for the administration and management of the schools as set forth in Florida Statute 1001.51 and is a final decision maker of the MDCPS. And we went to the statute and the legislature said specifically that among his duties are to serve as the custodian of the property. If he's not the final decision maker on the use of school property under this legislation, who would be? He is the final decision maker, Your Honor. I don't disagree with that, but I think when you engraft that concept into the civil rights laws and into the section 1983, what you have to look at is what occurred in this case, what decision was made, who made it, and was the person who made that decision that allegedly aggrieved the plaintiff subject to meaningful review. So the superintendent certainly had the right to overrule his subordinates. And in this case, I think what Judge Scola saw and what the district court saw was that the allegations as to the superintendent were at best sparse. All they said was at some point after the decision was made to deny access, he met with counsel for the, he bumped into counsel for the plaintiff, assured him he'd look into it, and then after the final report was issued, he declined to intervene. So what you have to look at... I don't mean to be cutting into your time, and I appreciate it. I'm just looking for help here, candidly. Yes, Your Honor. And it seems to me that insofar as our case law says we look to state legislation in order to see whether the state legislature has said who the final decision maker is, it looks like the superintendent as custodian is... Now, he may have exercised his authority poorly or properly. Maybe he shouldn't have deferred. Maybe he shouldn't have acquiesced to what his subordinates did. But that goes to the merits. I'm asking just a Monell question about whether they alleged enough to have the final policy maker named in the case. And they say, yeah, we named the superintendent. Maybe I'm missing something here. But what more should they have said in their complaint that they didn't say? Or who else should they have named that they didn't name in the complaint? Your Honor, I don't think they can cure that deficiency because I don't think there's any facts that support the conclusion that the school board is a governmental entity, whether through the superintendent or the board itself in not reversing this alleged decision. Itself took any discriminatory actions against this plaintiff. The actions were committed as alleged vociferously in the complaint by lower level administrators exercising their discretionary authority. Could they have sued those individuals on an individual 1983 claim? Probably. But what we're dealing with here is Monell liability directly against the governmental entity for the acts of subordinates, which the Supreme Court said in Monell is simply not appropriate. You cannot hold the school board liable. But don't they allege A, the final decision maker is the superintendent and B, he exercised his authority. No. Your Honor, that's not our reading of the complaint. They did not specifically allege nor could they have under any of these facts given all their allegations about Mr. Steiger and Ms. Brown and what actually occurred. The superintendent didn't get involved until months after these decisions had been made. Do they not allege? Just help me with this. That there came a point in time when the issue wound its way up the chain of command and went to the final decision maker, the superintendent. He was told, he got the report, and he didn't intervene and stop his subordinates from doing what they were doing. Isn't that a fair statement of what they say? I don't think they've said it in the way the court has expressed it. I think that they've said that the superintendent became aware after the fact and that once the report was issued, they allege, the superintendent, along with Mr. Steiger, indicated that they would not be allowed back on property. So the superintendent was actually involved in the decision-making process at some late point in the stage and didn't say no when they cut the plaintiff out from using the property. All I'm trying to get at is why that isn't enough for Monell. Just to pass the Monell question, on the merits, you may be dead right, but I'm not asking about that because Judge Scola dismisses the case against the school board on one ground and one ground alone as I read it. He dismisses it against them simply because they haven't properly alleged Monell liability. They don't have the final decision-maker. Correct, Your Honor. And again, our position is that regardless of whether or not the superintendent is a final decision-maker for the school board, he was not the final decision-maker for the decision made in this case that the plaintiffs contend caused their constitutional injury. And they're not able to allege that a final decision by a final policymaker was made on that issue. Okay, very well. Thank you so much for your time. I appreciate it. Mr. Ronzetti, let's hear from you. May it please the court. The appellant plaintiff asserted three profound constitutional claims against the Office of Inspector General attaching to the complaint the final report and has admitted both in the papers and here in open court that that document contains an anonymous complaint. The anonymous complaint itself is at page 66 of document entry 14-10. That anonymous complaint identified Habbad as receiving special treatment and not simply that, receiving special treatment from a school board member and his assistant and not paying fees. Actually, the document itself, the report, which with its attachments is hundreds of pages long, is now incorporated into the pleadings and part of the pleadings for all purposes. When you say that, let me ask you this. When you say for all purposes, and I know you're quoting our language, so when we say for all purposes, like just how far are you willing to lean into that? Like what about his libel example? What if somebody writes some article for The Atlantic that says that Judge Newsom cheated on the bar exam and I sue and I attach the article so that the court will have it as a reference tool and in the complaint I say, among other things, that's false. Yes, Your Honor. Is that a conclusory, is my that's false a conclusory allegation that can't overcome the detail in The Atlantic article? Yes, it is. And this court itself in the Gill case, for example, there are other cases as well, explained in detail how the court and how the district court should go through analyzing those exhibits and considering a circumstance where the plaintiff is alleging that there's falsity in the exhibits. In the Gill case, it was a false arrest section in 1983 case and the plaintiff attached the arrest affidavit and was claiming that parts of it were true but also the parts of it were false and argued almost the identical argument here that when we assert something is false then basically we get to, the plaintiff can get to cherry pick. We want to use these parts but you've got to ignore the rest and this court said that is absolutely not true. What is required is a detailed analysis looking allegation by allegation and at the exhibit and the exhibit will control unless there are specific factual allegations that contradict the exhibit. So would my VATS false allegation sufficiently contradict the Atlantic article that I've attached to the complaint? Your Honor, it's very context specific. It's difficult for me to say what they're saying is false. I did not cheat on the bar chart. Is it something empirically that would be known to be false or not known to be false? Yet, there may be a time when that type of statement may be made but let's circle back to this case, Your Honor. All that's at issue that was actually relied upon by that district judge was the anonymous complaint. See, I think that's your stronger argument. This is why I asked you like the limits of the principle. I frankly kind of worry about the idea that the minute a plaintiff attaches something to a complaint, we've got to believe every jot and tittle of that thing but if all that's really at stake here is that the report acknowledges the fact which I think is acknowledged in the complaint itself that there was this anonymous complaint filed against Chabad, then I actually think this is sort of a narrow case. I don't think we need to explore the limits of the principle. You really don't, Your Honor, and the district judge went through that Gill analysis in a long factual recitation but when you look at the reasoning of it, frankly, all that was really relied upon was that anonymous complaint in regards to the equal protection analysis. We have other arguments about equal protection as well but I think that just takes care of it. There's no other similarly situated entity out there. Their argument is difficult to understand on equal protection. It seems like they're arguing that we should've investigated everyone that could've possibly done this. Our argument is the exact opposite. Under the law, under Enquist and other jurisdictions like the Eighth Circuit and Flowers have said investigated bodies can't be subject to equal protection analysis in a class of one type case because it's impossible. Investigative decisions require too much individualized treatment and it just isn't subject to the analysis. So that's our argument on equal protection. Yes? Can I ask you just again a prefatory question? It's clear from Judge Skoller's order of dismissal that as against the school board, the case is dismissed under 12b-6 because it fails under Monell. And he specifically tells us therefore he declines to address the claims dealing with free exercise, free expression, equal protection or due process against the school board.  for throwing out the school board. Monell liability insufficiently pled. When he comes to the OIG, he goes into, as your dialogue with Judge Newsom reflects, he goes into a discussion about each of these or at least some of these headings. He talks about equal protection. He talks about due process but not the free exercise claim against OIG. My question is whether or not they could possibly allege Monell liability against the OIG who by no theory would have any authority over whether the property is or is not used by the plaintiff. All OIG can do is give you a report and say here's what we found. Do whatever you want. Am I missing something here? No, your honor. In fact, we argued the Carruth case on the direct causation issue an opinion that you authored. There is no direct line of causation to the loss of the property interest whatever that interest may have been in this case. We argue there is no property interest under state law. I'm just trying to understand what the district court did. Okay. When it came to the school board, he throws it out on one ground only. Yes. When it comes to the OIG, he goes into the merits and he talks about equal protection, class of one. He talks about due process. But he doesn't say anything about their central claim which is free exercise, right? Well, your honor, he does in the course of discussing Monel as it relates to the OIG. He says they've alleged Mary Cagle is responsible is a responsible party and then he points out that all that they have alleged regarding the free exercise issue is in one paragraph. Paragraph 166 where they say in the investigation there was some bias and there was pressure against certain individuals and then the judge says they haven't shown they haven't tied that to Mary Cagle. They haven't shown that it was a custom or policy to arise with the force of law. He does not do an analysis though, your honor that which we argued and we argue here that there is no substantial burden on a sincerely held religious belief and we still believe that because all we did was write a report. I'm asking a different question. Yes, sir. One, did the district court dismiss the case against OIG for among other reasons the fact that OIG was not a final policy maker? Did he use that as one of the reasons? And if the answer is no you certainly pleaded and argued it. Is that a reason we can use? I believe the jurisprudence of this court would permit it and it would also permit you to not reach the question. But I believe you could. Did he reach the question of whether the OIG had final policy making authority over this question of whether the schools could or could not be used for a particular purpose by a particular party? He did reach the careth question and ruled that there was no direct line of causation albeit he didn't discuss it in the first amendment principles. He discussed it in the due process section. The same principle applies in both sections. There was no loss of anything meaningful. And then second of all he did use the Monell analysis regarding Mary Cagle and ruled that there was not a sufficient showing that the ultimate decision maker was responsible for any constitutional violation. If I've been clear enough. You have. Thank you very much. Thank you your honor. Very well. Thank you so much. Thank you. Mr. Stock you've got five minutes remaining. First of all in particular as far as the superintendent is concerned in paragraph 180 of the complaint we specifically allege that the superintendent improperly relying on Garcia denied Chabad Halil access to the facilities. So that's a specific allegation and it's right in the complaint. Second of all there was a discussion about the complaint letter. The school board policy 015789 requires the OIG to keep the board and the audit budget committee informed of fraud abuses and deficiencies. And under section 2-1076D7 of the Miami-Dade Code of Ordinance it says when the inspector general detects corruption or fraud he or she shall notify the appropriate law enforcement agencies. Now the fact that there was a complaint allegedly triggered this two year investigation. But in the reply to the complaint we advise the OIG based upon our investigation that thousands of organizations use school board facilities and don't pay for them. So if that's a violation of school board policy and we advise them of it why didn't they investigate that? That seems to me to be to meet the class of one requirement to show a desperate treatment. Let me circle back for a second there to your first argument. And that was about the allegation with respect to the superintendent. So opposing counsel said that while the superintendent may have been a decision maker he was not a final decision maker in this case. And your response is paragraph 180 of the complaint the superintendent denied access to the facility. So I want to make certain that I understand your argument. Your argument is that that makes him the final decision maker in this case. Well that's among other things. I mean he also advised us that he was going to work something out and he assumed the authority. And Monell is not that unforgiving. Monell said that someone who can fairly be said to be a decision maker. Now the exact language I could I have it here. It says by those who edicts may be fairly said to represent official policy. Now the superintendent supervises as superintendent the COO and the CFO and those people report to him and he tells them what to do. That doesn't immunize him from liability because people work under him. I mean that's like saying that we're not going to go to the chief executive officer because after all they have employees. These employees don't act independent of one another and we've alleged and we've tied into the complaint that they all report to the superintendent and the superintendent is the final decision maker. And it even says in the statute that the superintendent has to advise and counsel the board. It doesn't say he needs the consent of the board. I mean when the president appoints a judge the Senate Judiciary Committee reviews it and then the Senate takes a vote and it goes with the advice and consent of the Senate. But then we don't say that the president is not a decision maker because there are other decision makers as well. The fact that the superintendent has even greater powers. He only has to advise and consult. So therefore I think under Monell it's clear that that threshold has been met. Now we also have to look at MDCS policy number 7510. It says entitled specific rental policies. It says falsification of the application  So if the OIG comes up with a report an untrue report and knowingly says that they falsified applications when they knew that it's not the case the school board has no other investigative agency to refute that report. So therefore by their own rules they can no longer provide access to school facilities. So therefore it's the OIG that essentially made the decision that yes this entity committed fraud and no they can't use the facility based upon the policy of the school board. Mr. Stock can I ask you just one quick question. With regard to the second defendant in this case you charged the Miami-Dade County Office of Inspector General and in paragraph 17 of the complaint you referenced Mary Cagle as the chief officer of the Inspector General's office. Again my question is based on Monell what final decision making authority did Mary Cagle or the OIG have in deciding whether or not to make this school property available to your client. I was trying to elucidate that point. It's an interstitial authority. If the Inspector General finds that there was a falsified application the school board's policy is not to allow rental use of the facility. I appreciate that. Based upon the report the final decision maker may bar the use of the property but Cagle and the OIG have no power to bar it or not. The school board or the superintendent could say could they not. Notwithstanding the report there are other reasons and we're letting them use the property. I don't think so. Could Cagle overrule the school board and the superintendent on the use of the property? I don't think so without violating their own policy. I think they would have to abide by their policy and the policy says falsification of an application will be grounds for denial of... I think you're right that they would be in violation of their rules. But I'm simply asking whether that makes the Inspector General who prepares a report the final decision maker as custodian over the property. Seems to me custodian is the superintendent. Correct. And the superintendent is acting on the falsification of a report by the Inspector General. The Inspector General couldn't say to your client or to you I'm denying you access to the property. Not in those terms. Not in any terms. All she could say is I think you are in violation and the boss man ought to prevent you from doing it but I don't have the power to prevent you from using the property. That would be a fair statement wouldn't it? Yes it is. It is a fair statement but it's a direct link to the school board's necessity to follow their own policies and deny access. So you know while they can do it indirectly they could do it indirectly by issuing a report that's false and saying that there was fraudulent activity when there wasn't. Obligating the school board to activate its policy and therefore deny access. And in that way they could in fact effectuate indirectly what you're correct in observing they can't do directly. Alright very well. Thank you both so much. That case is submitted and the court is in recess.